**Opinion issued May 8, 2025**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-24-00885-CV**

———————————

**IN THE MATTER H.M.-L., a Juvenile**

———————————

**On Appeal from the 315th District Court**
**Harris County, Texas**
**Trial Court Case No. 2020-02049J**

———————————

## MEMORANDUM OPINION

The sole issue presented in this accelerated appeal is whether the juvenile court improperly waived jurisdiction and transferred the case against H.M.-L. to criminal district court.[1]  Because we conclude that legally and factually sufficient evidence supports the trial court's finding that, for a reason beyond the control of

———

[1] *See* TEX. FAM. CODE §§ 54.02(j), 56.01(c)(1)(A), (h), (h-1).

the State, it was not practicable to proceed in juvenile court before H.M.-L.'s eighteenth birthday, we affirm.

## Background

In approximately 2016, H.M.-L. moved from Honduras to Houston to live with his sister and her two minor sons, A.C. and G.C. H.M.-L. babysat A.C. and G.C. after school while his sister was at work. In late March 2019, A.C. and G.C. disclosed to their mother that H.M.-L. was "touching their private parts and that he had put his private part in their mouth and . . . where they poop from." Both children disclosed that the abuse had happened multiple times, with the last occurring around March 13, 2019. When the children's mother learned of the alleged sexual abuse, she contacted law enforcement. Following the report of sexual abuse, Texas Department of Family and Protective Services (DFPS) removed H.M.-L. from his sister's home.

At the time of the alleged offense, A.C. was eight and G.C. was seven. And H.M.-L., who was 16, would turn 18 on March 6, 2021.

In April 2019, forensic interviews and medical examinations of A.C. and G.C. were conducted. Shortly thereafter, in May 2019, Houston Police Department Officer R. Stanfield was assigned to investigate these allegations of sexual abuse against H.M.-L.

On August 16, 2019, H.M.-L., who was in the custody of Child Protective Services (CPS) in San Antonio at the time, was interviewed as part of the investigation. Because H.M.-L. is Spanish-speaking, the interview was not conducted by Officer Stanfield but instead by a Spanish-speaking officer. H.M.-L. initially denied sexually assaulting his nephews, but later changed his story and admitted "that he did those things to his nephews because he had smoked marijuana and that's what made him do it." Based on H.M.-L.'s interview, Officer Stanfield believed that he had probable cause to file charges for aggravated sexual assault against H.M.-L.

That same day, August 16, Officer Stanfield presented the case in person to an assistant district attorney at the Harris County District Attorney's Office, who accepted charges. Shortly thereafter, Officer Stanfield contacted Bexar County CPS and was informed that, on August 17, H.M.-L. ran away from CPS custody. Officer Stanfield contacted the San Antonio Police Department and learned that the Missing Persons Division was assigned to look for H.M.-L. Officer Stanfield contacted Missing Persons and confirmed that they were actively investigating the case and searching for H.M.-L. Officer Stanfield continued to contact Missing Persons, as well as the CPS facility where H.M.-L. had been placed, monthly to check on the progress of the investigation and for updates on H.M.-L.'s location.

For over eight months, from August 17, 2019 until the end of April 2020, H.M.-L. could not be located. He returned to a CPS facility at the end of April 2020. H.M.-L. was thereafter placed in the Emergency Shelter at the Whataburger Center for Children on May 4, 2020.

According to Officer Stanfield, by that time "[w]e were in a pandemic," and Bexar County CPS informed him that it would not release H.M.-L. without a warrant for his arrest. Officer Stanfield planned to seek a directive to apprehend,[2] then travel to San Antonio to take custody of H.M.-L. and bring him back to Houston. But, because of the Covid-19 pandemic, the Harris County Juvenile Detention Center was not accepting additional juveniles at that time. Therefore, Officer Stanfield was concerned that he would not have anywhere in Harris County to release H.M.-L., had he taken him into custody at that time.

In July 2020, Officer Stanfield again attempted to retrieve H.M.-L. from CPS custody in San Antonio but learned that H.M.-L. had been exposed to Covid-19. Officer Stanfield was instructed by his captain to temporarily "put the case on hold" for everyone's safety.

---

[2] "The various legal justifications for taking a child into custody are set out in Family Code Section 52.01(a)." *Hampton v. State*, 86 S.W.3d 603, 610 n.12 (Tex. Crim. App. 2002). One of those justifications is a "directive to apprehend" issued by the juvenile court under Section 52.015. *See* TEX. FAM. CODE § 52.015 ("On the request of a law-enforcement or probation officer, a juvenile court may issue a directive to apprehend a child if the court finds there is probable cause to take the child into custody.").

Between August and September 2020, Officer Stanfield made additional attempts to pick up H.M.-L. but learned that H.M.-L. had run away from CPS custody for a second time.[3]

On September 28, 2020, Officer Stanfield obtained a directive to apprehend. He notified the Whataburger Center that he would be coming to pick up H.M.-L. but was informed that, on October 1, 2020, H.M.-L. had run away for a third time. H.M.-L. returned to the Whataburger Center on October 12, 2020.

Once Officer Stanfield received word that H.M.-L. had returned to the Whataburger Center, on October 15, he traveled to San Antonio to take custody of H.M.-L. H.M.-L. was thereafter transported to the Harris County Juvenile Detention Center, which was then accepting juveniles, on October 21, 2020—approximately five months before his eighteenth birthday. On October 26, 2020, the State filed its original petition alleging that H.M.-L. had engaged in delinquent conduct by sexually assaulting a person younger than 14 years of age.

On November 5, 2020, the juvenile court conducted a detention hearing.[4] At this hearing, the State opposed H.M.-L.'s release from detention because he had a history of running away and because he was going to be released to a residential

---

[3]      It is not clear from the record precisely when H.M.-L. left CPS custody on this occasion, or when he returned to CPS custody after running away for this second time.

[4]      *See* TEX. FAM. CODE § 54.01.

treatment center in Dallas, which was outside the jurisdiction of the Harris County Juvenile Probation Department (HCJPD). Tricia Mason, the State prosecutor at the detention hearing, voiced her objections based on his "strong history of runaway" and alerted the juvenile court that H.M.-L. was fast approaching his eighteenth birthday. Over the State's objections, the juvenile court ordered H.M.-L. to be released that same day. H.M.-L. was released to his DFPS caseworker for placement at the Wilton Place Residential Treatment Center in Dallas.

On January 4, 2021—two months before H.M.-L.'s eighteenth birthday—a DFPS caseworker notified the HCJPD that H.M.-L. had run away from his court-ordered placement at the Wilson Place Residential Treatment Center. On February 25, 2021, that caseworker reported to HCJPD that H.M.-L. had returned to the Whataburger Center in San Antonio but had tested positive for Covid-19. H.M.-L. ran away from the Whataburger Center that same day. He was still missing when he turned 18 on March 6, 2021.

Three years later, on May 7, 2024, the State filed a motion requesting that the juvenile court waive its jurisdiction and certify the proceedings to criminal district court. H.M.-L. was transported to the Harris County Jail on May 25, 2024.[5]

---

[5] It is not clear from the record when H.M.-L. was located. But the probation records entered into evidence at the certification hearing indicate that, prior to being transferred to the Harris County Jail in May 2024, H.M.-L. had been confined in the Bexar County Jail serving sentences for burglary of a building and assault with

The juvenile court conducted a certification hearing on September 16, 2024, at which the State presented the testimony of Officer Stanfield and prosecutor Tricia Mason. After considering post-hearing briefing, the trial court made the following pertinent findings:

> The Court finds, in light of the evidence presented at the hearing, the contents of the Court's file in the above-styled cause number, of which this Court has taken judicial notice, by a preponderance of the evidence that for a reason beyond the control of the State it was not practicable to proceed in juvenile court before the 18th birthday of [H.M.-L.]; and that after due diligence of the State it was not practicable to proceed in the Juvenile Court before the 18th birthday of [H.M.-L.]. *See* Tex. Fam. Code Ann. § 54.02(j)(4)(A), (B).[6]

Accordingly, the juvenile court signed a judgment waiving jurisdiction and transferring the case to criminal district court.[7]

This appeal followed.

---

bodily injury. These offenses occurred in November 2023 and January 2024, respectively.

[6] The juvenile court also found that: (1) H.M.-L. was over the age of 18 at the time of the certification hearing; (2) H.M.-L. was over the age of 14 and under the age of 17 at the time of the alleged offense; (3) no adjudication had been made concerning the alleged offense and no adjudication hearing had been conducted; (4) there is probable cause to believe that H.M.-L. committed the offense of sexual assault of a child under the age of 14; and (5) H.M.-L. was properly served with the State's petition for discretionary transfer to criminal court and motion to waive jurisdiction. *See* TEX. FAM. CODE § 54.02(j). H.M.-L. does not challenge any of these findings on appeal.

[7] The juvenile court signed its written order on October 25, 2024. After a motion filed by the State, the juvenile court issued a judgment nunc pro tunc correcting a clerical error in its judgment.

7

**Waiver of Jurisdiction and Transfer to Criminal District Court**

H.M.-L. challenges the sufficiency of the evidence to support the juvenile court's findings that (1) it was beyond the State's control to proceed in juvenile court before H.M.-L.'s eighteenth birthday and (2) after due diligence by the State, it was not practicable to proceed in juvenile court before H.M.-L's eighteenth birthday.

## A.    Standard of Review and Applicable Law

The juvenile courts have exclusive and original jurisdiction over proceedings against a respondent who was a minor at the time the charged offense occurred. TEX. FAM. CODE § 51.04; *In re J.J.T.*, ___ S.W.3d ___, No. 23-1028, 2025 WL 937479, at *3 (Tex. Mar. 28, 2025).  With several exceptions, "all [juvenile court] dispositions automatically terminate" when a respondent turns eighteen. TEX. FAM. CODE § 54.05(b); *In re J.J.T.*, 2025 WL 937479, at *3.

For felony offenses, however, Family Code section 54.02 authorizes a juvenile court to waive its exclusive jurisdiction and, in its discretion, transfer the case to criminal court. *In re J.J.T.*, 2025 WL 937479, at *3; *see* TEX. FAM. CODE § 54.02.  Section 54.02(j) governs the circumstances for such transfers *after* the juvenile turns eighteen. *See* TEX. FAM. CODE § 54.02(j).  "Section 54.02(j)'s provisions 'limit the prosecution of an adult for an act he committed as a juvenile if his case could reasonably have been dealt with when he was still a juvenile.'" *In re*

8

*J.J.T.*, 2025 WL 937479, at *3 (quoting *Moore v. State*, 532 S.W.3d 400, 405 (Tex. Crim. App. 2017)).

Section 54.02(j) contains several requirements that the State must prove. First, as relevant here, the respondent must have been 14 years of age or older and under 17 years of age at the time of the alleged felony offense. *See* TEX. FAM. CODE § 54.02(j)(2)(B). Second, the juvenile court must find that no court had conducted an adjudication or hearing concerning the alleged offense. *See id.* § 54.02(j)(3); *In re J.J.T.*, 2025 WL 937479, at *4. Third, the juvenile court must determine "that there is probable cause to believe that the child before the court committed the offense alleged." TEX. FAM. CODE § 54.02(j)(5). Finally, and also relevant here, "the juvenile court must find that statutory good cause justifies the State's failure to proceed before the respondent turned eighteen." *In re J.J.T.*, 2025 WL 937479, at *4; *see* TEX. FAM. CODE § 54.02(j)(4).

The juvenile court may find one of two good-cause alternatives if the State proves by a preponderance of the evidence that:

(A) for a reason beyond the control of the state it was not practicable to proceed in juvenile court before the 18th birthday of the person; *or*

(B) after due diligence of the state it was not practicable to proceed in juvenile court before the 18th birthday of the person because:

(i) the state did not have probable cause to proceed in juvenile court and new evidence has been found since the 18th birthday of the person;

9

(ii)     the person could not be found; or

(iii)    a previous transfer order was reversed by an appellate court or set aside by a district court[.]

TEX. FAM. CODE § 54.02(j)(4) (emphasis added); *see also In re J.J.T.*, 2025 WL 937479, at *4.

Here, as noted above, the trial court found that the State demonstrated by a preponderance of the evidence that (1) for a reason beyond the control of the State, it was not practicable to proceed in juvenile court before H.M.-L.'s eighteenth birthday and (2) after due diligence of the State, it was not practicable to proceed before H.M.-L.'s eighteenth birthday. *See* TEX. FAM. CODE § 54.02(j)(4)(A), (B). On appeal, H.M.-L. challenges the sufficiency of the evidence regarding certain elements of these findings.

We use a two-step standard to review a juvenile court's order waiving its exclusive original jurisdiction and transferring a case to criminal district court. *Bell v. State*, 649 S.W.3d 867, 887 (Tex. App.—Houston [1st Dist.] 2022, pet. ref'd). First, we review the challenged findings under a traditional evidentiary sufficiency review. *Id.* In considering the legal sufficiency of evidence supporting a finding, we view the evidence in the light most favorable to the challenged finding and disregard contrary evidence unless a reasonable factfinder could not reject it. *Id.*; *In re A.M.*, 577 S.W.3d 653, 659 (Tex. App.—Houston [1st Dist.] 2019, pet. denied). If more

10

than a scintilla of evidence supports the finding, then the evidence is legally sufficient. *Bell*, 649 S.W.3d at 887; *In re A.M.*, 577 S.W.3d at 659.

In conducting a factual sufficiency review, we consider all the evidence presented to determine whether the challenged finding conflicts with the great weight and preponderance of the evidence so as to be clearly wrong or unjust. *Bell*, 649 S.W.3d at 887; *In re A.M.*, 577 S.W.3d at 659.

When the juvenile court sits as factfinder, as here, the court alone determines the credibility of witnesses and the weight to give their testimony. *Bell*, 649 S.W.3d at 896. The factfinder may "believe or disbelieve a witness's testimony, in whole or in part, and [is] tasked with weighing the evidence and resolving any inconsistencies." *Id.*

If we conclude that the challenged findings are supported by legally and factually sufficient evidence, we proceed to the second step in our review: determining whether the juvenile court abused its discretion in ultimately waiving its jurisdiction and transferring the case. *Id.* at 887. A court abuses its discretion when it acts arbitrarily or without reference to any guiding rules and principles. *Id.* A juvenile court does not abuse its discretion merely because it bases its decision on conflicting evidence. *Id.*; *see also In re A.M.*, 577 S.W.3d at 659 ("As with any decision that lies within the trial court's discretion, the question is not whether we might have decided the issue differently.").

**B. Analysis**

With the foregoing standards in mind, we turn to H.M.-L.'s claim that the evidence is legally and factually insufficient to support the juvenile court's finding that, based on a preponderance of the evidence, for a reason beyond the control of the State it was not practicable to proceed in juvenile court before H.M.-L.'s eighteenth birthday.[8] *See* TEX. FAM. CODE § 54.02(j)(4)(A).

Noting that section 54.02(j)(4)(A) does not define "practicable" and applying the ordinary meaning, the Texas Supreme Court recently defined "practicable" in this provision as meaning "reasonably capable of being accomplished; feasible in a particular situation." *In re J.J.T.*, 2025 WL 937479, at *6 (quoting *Practicable*, BLACK'S LAW DICTIONARY (11th ed. 2019)). "Under subsection (A), a juvenile

---

[8] We note that the juvenile court's transfer order includes only the following finding with respect to subsection (B): "after due diligence of the State it was not practicable to proceed in the Juvenile Court before the 18th birthday of [H.M.-L.]." It does not, however, include a further finding under subsection (B)(i), (ii), or (iii). *See* TEX. FAM. CODE § 54.02(j)(4)(B)(i)-(iii). Because the statute only requires evidence of either subsection (A) *or* (B), and the transfer order does not include all of the pertinent subsection (B) findings, we limit our review to the sufficiency of the evidence supporting (A), i.e., whether the evidence is legally and factually sufficient to support the juvenile court's finding that after due diligence of the State it was not practicable to proceed in juvenile court before H.M.-L's eighteenth birthday. *See In re J.J.T.*, ___ S.W.3d ___, No. 23-1028, 2025 WL 937479, at *4, 7 (Tex. Mar. 28, 2025) (explaining that juvenile court may find "one of two good-cause alternatives" under section 54.02(j)(4)(A) or (B) that justifies State's failure to proceed before the respondent turned eighteen but noting that "without a diligence finding, the juvenile court had no basis to transfer the case under subsection (B)"); *In re M.A.C.S.-C.*, No. 04-23-00139-CV, 2024 WL 697095, at *3 (Tex. App.—San Antonio Feb. 21, 2024, pet. denied) (mem. op.) (noting that section 54.02(j) only requires evidence of subsection (A) *or* (B)).

12

court, in the exercise of its discretion, may credit a valid reason or reasons 'beyond the control of the state' making it infeasible for the State to proceed before the juvenile turned eighteen." *Id.* The supreme court explained that a determination of whether specific reasons for delay are "beyond the control of the state" is "highly fact specific." *Id.* at *7. And "[r]easons for delay beyond the state's control may overcome delays attributable to the state." *Id.* Ultimately, the supreme court concluded that "such fact-intensive determinations rest with the juvenile court," which, as the factfinder, determines the credibility of witnesses and weight to afford their testimony. *Id.*

Here, the record shows that there was approximately two years between the time of the alleged sexual assault—March 13, 2019—and H.M.-L.'s 18th birthday—March 6, 2021. One of those two years coincided with the worldwide Covid-19 pandemic. *See id.* (explaining that "[t]he timing of the outcry or crime must be considered against the time remaining until the juvenile's eighteenth birthday" and noting that, there, time between commission of offense and juvenile's birthday was "relatively short, a year and four months, and dovetailed with the pandemic").

And during those two years, H.M.-L.'s own actions of running away from both his CPS placement and his court-ordered placement resulted in an almost one-year period during which H.M.-L. could not be found—and thus a delay in the

13

proceedings that is directly attributable to H.M.-L.[9] The State has no duty to prevent a defendant from causing delay. *See In re J.C.W.G.*, 613 S.W.3d 560, 566–67 (Tex. App.—San Antonio 2020, no pet.).

Yet H.M.-L. argues that, despite the above evidence related to his multiple voluntary disappearances, the evidence is insufficient to support the trial court's finding that for a reason beyond the control of the State it was not practicable to proceed in juvenile court before his 18th birthday because at least some of the delay in this case is attributable to the State. According to H.M.-L., the State was responsible for an investigative delay between May 1, 2019, when Officer Stanfield was first assigned to the case, and August 16, 2019, when H.M.-L. was interviewed. And he contends that the State could have filed its petition and a directive to apprehend as early as August 16, 2019, the date charges were accepted and *before* H.M.-L. left his CPS placement.

We agree that the State did not present evidence of what, if any, investigatory efforts it took between May 1 and August 16, or otherwise demonstrate how this

---

[9] As noted above, H.M.-L. ran away from his CPS placement on August 17, 2019 and returned "at the end of April." He ran away again from his CPS placement on October 1, 2020 and returned on October 12, 2020. Yet again, H.M.-L. ran away from his court-ordered placement on January 4, 2021 and returned to the Whataburger Center on February 25, 2020—only to run away again that same day. There are 258 days between August 17, 2019 and April 30, 2020; 12 days between October 1, 2020 and October 12, 2020; and 62 days between January 4, 2021 and March 6, 2021—the date H.M.-L. turned 18. This amounts to 332 days of delay directly attributable to H.M.-L., without taking into account the undetermined number of days that he was missing in August or September 2020.

14

delay was beyond its control. Thus, this three-and-a-half-month delay is chargeable to the State. *See, e.g.*, *In re M.A.C.S.-C.*, No. 04-23-00139-CV, 2024 WL 697095, at *5 (Tex. App.—San Antonio Feb. 21, 2024, pet. denied) (mem. op.) (attributing ninety-six-day delay before case was presented to and approved by grand jury to State because State offered no evidence how this delay was beyond its control).

But we decline to attribute additional delay to the State once H.M.-L. voluntarily absconded from his CPS placement on August 17. Even if the State had filed its petition and received a directive to apprehend the same day it accepted charges, there is nothing in the record to indicate that it would have been able (or required) to take H.M.-L., who was in his CPS placement in San Antonio, into custody immediately. And H.M.-L. ran away from his CPS placement the very next day. It was not within the State's control to anticipate that H.M.-L. would run away from his placement the day after charges were accepted. *Cf. In re N.M.P.*, 969 S.W.2d 95, 100 (Tex. App.—Amarillo 1998, no pet.) (stating that due diligence does not require State to "do everything perceivable and conceivable to avoid delay").

H.M.-L. next argues that the State was aware of his location from April 2020 until September 2020 and that nothing prevented the State from filing formal charges and proceeding against him remotely. Thus, H.M.-L. contends this delay was not beyond the control of the State. But we see nothing in the record to indicate that the State was able to bring charges against H.M.-L. and proceed against him remotely,

15

without having first attempted to take him into custody, especially considering his flight history. We thus find H.M.-L.'s position to be speculative. Moreover, there was evidence before the juvenile court that the State was not simply declining to investigate or pursue the case against H.M.-L. during this time period.

Rather, as Officer Stanfield testified, he made multiple attempts to take H.M.-L. into custody after H.M.-L. returned to the Whataburger Center at the end of April 2020. But these attempts were hampered by the ongoing Covid-19 pandemic. Officer Stanfield testified that, because of the pandemic, the Harris County Juvenile Detention Center was not accepting additional juveniles at that time. Therefore, according to Officer Stanfield, he would not have had anywhere in Harris County to release H.M.-L., had he taken him into custody. *See, e.g.*, TEX. FAM. CODE § 52.02(a)(3) ("[A] person taking a child into custody, without unnecessary delay and without first taking the child to any place other than a juvenile processing office designated under Section 52.025, shall . . . bring the child to a detention facility designated by the juvenile board.").

Then, in July 2020, Officer Stanfield again attempted to retrieve H.M.-L. from CPS custody in San Antonio but learned that H.M.-L. had been exposed to Covid-19. Officer Stanfield was instructed by his captain to temporarily "put the case on hold" for everyone's safety. Thereafter, Officer Stanfield described that he made another attempt to take custody of H.M.-L. in August or September 2020 but learned

16

that H.M.-L. had run away again. Officer Stanfield continued to pursue this case, however, obtaining a directive to apprehend on September 28 and ultimately taking custody of H.M.-L. on October 15 (but not before H.M.-L. ran away from his CPS placement for a third time).

As evidenced by the above testimony, Officer Stanfield provided reasonable explanations for the delay in moving the case forward between the end of April 2020 and the time he was able to obtain a directive to apprehend and ultimately take custody of H.M.-L. in October of that year. The juvenile court, sitting as the factfinder, could have credited this testimony. *See In re J.J.T.*, 2025 WL 937479, at *7 (noting that juvenile court determines credibility of witnesses and weight to afford their testimony). Accordingly, based on the state of this record, we conclude that these delays are not attributable to the State, but rather to the pandemic or to H.M.-L.'s own actions. *See, e.g.*, *In re N.J.T.*, No. 13-21-00089-CR, 2021 WL 4202165, at *5 (Tex. App.—Corpus Christi–Edinburg Sept. 16, 2021, no pet.) (mem. op.) (rejecting respondent's argument that, because there was over year and half between time State filed its petition and final hearing, juvenile court abused its discretion in finding that for a reason beyond State's control it was not practicable

to proceed before respondent's 18th birthday, where evidence showed that respondent himself, as well as Covid-19 pandemic, contributed to delays).[10]

Finally, H.M.-L. argues that, after he was transferred to Harris County custody in October 2020, there was "at least a three[-]month available window before [H.M.-L.] again left CPS custody for the State to proceed in juvenile court." We acknowledge that there is a two-month (not three, as H.M.-L. contends) period between November 5, 2020—when H.M.-L. was released from detention—and January 4, 2021—when he absconded from his court-ordered placement—for which the State did not present evidence of what efforts it took to move ahead with proceeding against H.M.-L. in juvenile court. But even attributing these few months to delay caused to the State, we conclude that, in this case, the "reasons for delay beyond the state's control . . . overcome delays attributable to the state." *See In re J.J.T.*, 2025 WL 937479, at *7.

Indeed, the overwhelming source of delay in this case was caused by H.M.-L.'s repeated disappearances from his CPS and court-ordered placements. Those delays totaled nearly a year. Each time H.M.-L. voluntarily absconded from his placement, it resulted in a delay that inched this case closer and closer to his 18th

---

[10] *See also In re B.C.*, No. 02-21-00444-CV, 2022 WL 1420533, at *5 (Tex. App.— Fort Worth May 5, 2022, no pet.) (mem. op.) (holding that factfinder could have reasonably concluded that any delay caused by respondent's request for jury trial and pandemic that made jury trials impossible was beyond the State's control and that this evidence supported the juvenile court's section 54.02(j)(4)(A) finding).

birthday. *See In re N.J.T.*, 2021 WL 4202165, at *7 (concluding that respondent's delays were not inconsequential "because each day still resulted in edging closer to his eighteenth birthday"). And H.M.-L. last absconded from his court-ordered placement two months before his 18th birthday and remained missing well past that birthday. Neither these delays, nor the several-month delays related to the pandemic, can be attributed to the State. *See, e.g.*, *In re M.A.C.S.-C.*, 2024 WL 697095, at *9 (acknowledging investigatory delays caused by State, but concluding that overwhelming source of delay was caused by time it took for appellate court to render decision on mandamus petition, which was not attributable to State, and therefore juvenile court did not abuse its discretion in waiving its jurisdiction).

Accordingly, after viewing the evidence in the light most favorable to the juvenile court's finding and disregarding contrary evidence unless a reasonable factfinder could not reject it, we conclude that the evidence offered by the State related to delays caused by H.M.-L. and the pandemic constituted more than a scintilla of evidence supporting the juvenile court's finding that—"for a reason beyond the control of the State it was not practicable to proceed in juvenile court before the 18th birthday of [H.M.-L.]." *See Bell*, 649 S.W.3d at 887. We therefore hold that the evidence is legally sufficient to support the juvenile court's finding under section 54.02(j)(4)(A). *See* TEX. FAM. CODE § 54.02(j)(4)(A).

19

Furthermore, considering all the evidence presented, we likewise conclude that the juvenile court's finding that, "for a reason beyond the control of the State it was not practicable to proceed in juvenile court before the 18th birthday of [H.M.-L.]," is not against the great weight and preponderance of the evidence so as to be clearly wrong or unjust. *See Bell*, 649 S.W.3d at 887 ("An abuse of discretion does not occur when the juvenile court bases its decision on conflicting evidence."). Thus, we additionally hold that the evidence is factually sufficient to support the juvenile court's finding under section 54.02(j)(4)(A). *See* TEX. FAM. CODE § 54.02(j)(4)(A).

Having determined that the juvenile court's challenged finding is supported by sufficient evidence, we now review the ultimate waiver decision to determine whether the juvenile court abused its discretion. *See Bell*, 649 S.W.3d at 887. Given the evidence in the record and the trial court's findings, we conclude that the juvenile court's decision to transfer H.M.-L. to criminal district court for prosecution as an adult was not arbitrary, but instead represented a reasonably principled application of the legislative criteria found in section 54.02(j)(4)(A). We therefore hold that the juvenile court did not abuse its discretion in waiving its exclusive jurisdiction and transferring H.M.-L. to criminal district court.

We overrule H.M.-L.'s sole issue.

## Conclusion

For all of the reasons above, we affirm the juvenile court's order waiving its exclusive jurisdiction and transferring the case to criminal district court.

Terry Adams
Chief Justice

Panel consists of Chief Justice Adams and Justices Gunn and Guiney.